IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | January 21, 2026 |
| -versus- | ) | Charleston, SC |
| ZAQUANN HAMPTON, | ) | 2:24-196-2 |
| Defendant. | ) | |

# TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE DAVID C. NORTON
UNITED STATES DISTRICT JUDGE, presiding

A P P E A R A N C E S:

For the Government: J. CARRA HENDERSON, AUSA
US Attorney's Office
151 Meeting Street, Suite 200
Charleston, SC 29401

For the Defendant: DAVID P. MCCANN, ESQ.
Law Office of David P. McCann
PO Box 2344
Mt. Pleasant, SC 29465

Court Reporter: KAREN E. MARTIN, RMR, CRR
PO Box 835
Charleston, SC 29402

Proceedings reported by stenographic court reporter.
Transcript produced with computer-aided transcription software.

Wednesday, January 21, 2026

(WHEREUPON, court was called to order at 1:52 PM)

**THE COURT:** Take your seats. Thank you.

Yes, ma'am?

**MS. HENDERSON:** Your Honor, we are still on the record in the case Criminal No. 2:24-196. We are here for purposes of motions hearings for Zaquann Ernest Hampton, who is present represented by counsel, Mr. David McCann. Your Honor, there are two outstanding motions. One, ECF No. 749, is a motion to dismiss with prejudice. The second, ECF No. 760, is a motion to dismiss a count with prejudice, Count 9 with prejudice. So 749 is to dismiss 14, 15, and 16 with prejudice. 760 is to dismiss with prejudice.

For some background, Your Honor, the Government has dismissed Counts 14, 15, and 16. They were dismissed without prejudice. The Government has not dismissed and does not intend to dismiss Count 9 unless ordered to by the Court.

**THE COURT:** Okay.

**MS. HENDERSON:** So whichever motion you want to start with.

**THE COURT:** We'll do them in numerical order.

749 has already been dismissed. You want me to re-dismiss them?

MR. McCANN: Re-dismiss with prejudice, Your Honor, I do.

THE COURT: Why?

MR. McCANN: The history on this, we got this case and I got some discovery from Colleton County first because they were in this case before the Government adopted -- or the FBI's been involved in it, I think, all the way through. It looked like the search on December 27th of '23 at a residence in Walterboro had some problems. The more we dug and the more we checked on it, mainly with communications about the theft of a gun that was supposed to have been in this residence, we found out that the gun in fact had been recovered.

THE COURT: In New Jersey?

MR. McCANN: Say again?

THE COURT: In New Jersey?

MR. McCANN: In New Jersey. And that was on NCIC and had been transmitted to Colleton County. So I think law enforcement was or should have been aware of that. However, they went in anyway and conducted the search. And somehow realized that they didn't have enough and got another warrant and went in and seized some other items.

Now, the Government didn't respond to that motion except to dismiss the counts, which is fine.

However, the prejudice here is twofold as I see it. It's been my experience with probation when a gun turns up, even if the count has been dismissed, it's going to appear on the Presentence Report and my client could very well be enhanced.

THE COURT: Isn't that something you take care of at sentencing?

MR. McCANN: I'd like to take care of it today, Judge. I'll be making the same argument.

THE COURT: Yeah, but I'll be smarter at sentencing assuming there ever is a sentencing. There probably never going to be a sentencing anyway. You're the lawyer, right?

MR. McCANN: Well, to make it clear, this is not going to be a trial for Mr. Hampton. We are going to pursue a plea agreement. My client is responsible for some of the allegations in this indictment. He's going to take his responsibility but not for all. So this is not going to be a trial. It's going to be -- and I'm going to try to head off having to make this argument again at sentencing or when the Presentence Report gets out.

Secondly, if I didn't prevail on that at sentencing, then when he went to the BOP with a gun on him, he'd catch the price of certain First Step opportunities for jail credits. And he'd miss that and

I'm trying to head that off. Further --

**THE COURT:** Well, let me ask you a question. The Presentence Report is going to have all these facts in it anyway. Now, whether they tag him with a gun or not, it's going to say that they went in and they were looking for a gun. Oh, by the way, the gun was recovered in New Jersey. So those facts will probably be in the Presentence Report whether they tag him with it or not, won't they?

**MR. McCANN:** Well, I don't know if it will be or not. I mean, if you ruled today with prejudice, I've got an argument to take it out without arguing it again at sentencing.

**THE COURT:** Okay.

**MR. McCANN:** And further, if I've read the -- if I understand without prejudice, the Government could reinstate these charges. I don't think there's any prohibition against them doing that. This is new ground for me, but I think they can do it. And if they initiated the dismissal, they are not going to go forward, I would hope they wouldn't have any objection to just doing it with prejudice and have it final and making it over with.

**THE COURT:** Okay.

Yes, ma'am?

**MS. HENDERSON:** Your Honor, I would go in

reverse order. But all of the concerns about wanting this dismissed so that he doesn't get dinged for a gun, there is so much evidence in here of multiple firearm possessions. This one does not matter. You could take this one away. We've got him on wire calls. He's got his gun in the car. He's talking about getting his gun from another person. He's talking about getting bullets for his gun from his girlfriend.

We've got him on another 924(c). There is a ton of evidence in this case of Mr. Hampton's gun usage. It's coming in whether this is dismissed with or without prejudice. So that argument is technically irrelevant. It doesn't change how he is -- it doesn't change the fact that there's going to be information in there about him possessing a firearm.

I realize he's also filed motion to dismiss the 924(c). So I get that his hope is that that goes away, too. And then the two actual possessions are gone.

Your Honor, this case comes down to one very specific question. And that is whether or not the officers had an obligation or a duty to check and see if the gun had been recovered before they executed the search warrant. And the answer to that very well may have been yes.

We were -- out of fairness to the defendants,

agreed to dismiss those counts because we had other viable charges on them. It's dismissed without prejudice because at the end of the day no court has ruled that search unconstitutional. We dismissed it because there were other viable options to choose from and didn't think that at the end of the day it was worth the Court's time or anybody else's time litigating the issue.

The Government does not dismiss without -- I'm sorry, the Government does not dismiss with prejudice except in the event that a defendant has died or we've indicted the wrong person. All of our dismissals are generally without prejudice, Your Honor.

If you decide to rule differently, obviously, that is the Court's decision. But from the Government's position, that's why it's done without prejudice. This was -- this case has a Fourth Amendment issue that could rule in our favor if we reindicted it. But we chose to dismiss it to pursue the more viable offenses.

**THE COURT:** Okay.

Yes, sir?

**MR. McCANN:** If I understood correctly counsel's argument that it doesn't make much difference because she thinks she has all this other mentions of weapons on the wire and on phone calls and such --

**THE COURT:** Is that -- do you agree with her?

**MR. McCANN:** I'm not going to agree with her, no.

**THE COURT:** I'm not saying you agree that -- you agree that there is -- in the discovery those things exist?

**MR. McCANN:** I think that if I objected to that coming in by way of the probation office, I would object and it would be litigated at sentencing, yes, sir.

**THE COURT:** It would what?

**MR. McCANN:** It would probably have to be litigated at sentencing or heard by the Court. I don't know.

Your Honor, the Government -- we filed this motion to dismiss. The Government did not file responsive pleadings. Surprisingly, we got the notice from the Government that they were going to dismiss these three counts. And they realized that there was a problem here. After we got that notice from the Government, more discovery came in to us from the Government.

**THE COURT:** I didn't understand her to say she dismissed it because there was a problem. I understood her to say she dismissed it because there was overwhelming evidence of other guns and use of guns. And it really didn't make any difference at all because she didn't want to fight that battle.

**MR. McCANN:** Okay. If that's the case, I think you can say that's fine and dismiss with prejudice. And then it's final. It's over. Don't have to worry about it again.

**THE COURT:** Okay.

**MR. McCANN:** Anyway, what I was getting to, we received more discovery from the Government after what I just described to you. Her response dismissing these counts, these three counts that showed more information that supported our position, that the law -- Colleton County knew that this gun was not in that house when they went in.

**MS. HENDERSON:** Objection, Your Honor. That is -- he is stating facts that are just not testified to in evidence or that the discovery supports. I'm sorry.

**MR. McCANN:** We had our investigators, retired detective review this. And it was clear, NCIC was there and they should have known it before they went.

**THE COURT:** But you just said knew instead of should have known. That's a totally different kettle of fish, Mr. McCann. I mean, that's what you just said. You said that Colleton County knew that that gun had been recovered.

**MR. McCANN:** I can't speak for what they knew. But they should have known.

**THE COURT:** Okay. But that's not what you said. You started out with saying should have known. But you just said the last time you argued that case before she stood up, you said Colleton County knew that that gun had been recovered in New Jersey and still went ahead with the search.

**MR. McCANN:** Well, they should have known because it was on their NCIC feed in their office. But if they didn't, without taking testimony and having them here on a suppression hearing, I wouldn't know.

**MS. HENDERSON:** Your Honor, if I can just -- Mr. McCann also filed multiple motions for discovery amongst all of this. So even though we dismissed it, he's still entitled -- I was steadily getting the documents he was -- the specific documents he was requesting. So even though we dismissed it, I'm still going to turn over to him the things that he's requested. So that's why discovery was ongoing because he had filed motions to compel discovery asking for certain things. I had sought them for him. Whatever I was getting, I was turning over. I didn't have control over when I received them so that's why some came after the dismissal.

**THE COURT:** Sure.

**MR. McCANN:** Your Honor, on Page 2 of my -- of 749, my motion to dismiss with prejudice, at the bottom of

Page 2 and on into the top of Page 3, I'll read it from the motion.

**THE COURT:** Read it slowly because my court reporter is getting ready to retire and she's gotten arthritic hands.

**MR. McCANN:** Do you want me to hand a copy up?

**THE COURT:** Sure.

I'm just kidding.

**MS. HENDERSON:** Your Honor, I can clear up the confusion. Colleton County dispatch received a notice from New Jersey that they seized the gun. One of the officers that was on duty that night took the call, removed it from NCIC. No one on the investigation team knew that. That officer had no involvement in the search warrant execution.

So while it is true an officer with Colleton County was notified by New Jersey and put the information in NCIC, the officers that executed the search warrant did not know at the time they executed it that the firearm had been recovered. So that's why I objected when he said Colleton County knew because it insinuated the officers executing the warrant knew and they didn't.

**THE COURT:** So I guess you're both right. Colleton County knew because, you know, one of their agents knew at the time but that information was not

conveyed to the search team.

**MS. HENDERSON:** Correct, Your Honor.

**THE COURT:** Is that a fair statement?

**MR. McCANN:** And one thing further. There was a message -- there was an instruction from Colleton County with that information from New Jersey that the gun was up there, not to contact the owner of the gun who reported it stolen. That was in the discovery as well.

**THE COURT:** Okay.

**MR. McCANN:** So action was taken based on what they learned about the gun being in New Jersey far in advance of the warrant being executed.

**MS. HENDERSON:** Because the victim is the girlfriend of one of the defendants, Your Honor.

**THE COURT:** Okay. Yes, sir?

**MR. McCANN:** We'd just like it to be final, Judge. And if, as counsel said, this has not been litigated by the Court as to whether or not this search was unlawful. And if that's what it takes, then we'll -- I'd ask the Court to schedule it for a hearing and have the police officers here so you can hear what they did and didn't do and what they knew and didn't know.

**THE COURT:** All right. How about number 760?

**MR. McCANN:** Your Honor, the 756?

**THE COURT:** We just did 749. Now it's 760. I

think that's right.

**MS. HENDERSON:** I'm sorry, I read the wrong ECF number. It is 756. 760 was my response. I apologize.

**THE COURT:** All right. 756. Thank you.

Right again, Mr. McCann.

**MR. McCANN:** I'm trying again. I'm back at bat so here we go. This is to dismiss Count 9, which is a 924(c) count. Okay?

**THE COURT:** Yep.

**MR. McCANN:** And I think the Court realizes now one of the dismissed counts that I just argued was a 924(c) as well. This is a second 924(c) that took place in late April, early May of '23, almost three years ago. And it was a hand-to-hand sale as alleged with my client making a sale to a confidential informant. There's a video of this because the informant went into the dwelling in Walterboro and -- the CI, let me clarify that. The CI is an FBI CI, as far as we know, went into the house and he was wired. He had a cell phone apparently that video, audio, was taking pictures of everything. And in my motion, we detail the activity that we've seen on this video. Myself, my clerk, and my investigator have seen it twice. And I have to go to the Government's quarters to see it. My client has not seen it. And it's based on

that, we've made this motion. And it's not a dispute on the facts at all. It's based on the law that govern what activity on the part of someone accused of this crime has to commit in order to constitute a 924(c). And I relay it in my motion that it was -- the elements that are outlined in I think the Fourth Circuit case, Lomax, that I think I quoted were not here.

And based on the -- I think the Court can decide on this based on the law rather than on disputed fact. The video tells the story. That's all we have of this. Very few other information about the informant, what he was told to do before he went, what he was debriefed on because he's being -- the Government thinks that that record needs to be protected. We'd move for that to be released to us as well so we can properly look at it. But at any rate, based on the video, which I gather the Court has not seen --

**THE COURT:** Right again, Mr. McCann.

**MR. McCANN:** Say again?

**THE COURT:** Right again.

**MR. McCANN:** Would you like to see it?

**THE COURT:** I don't think I'm going to have much of a choice. If you put it into play, I'm going to have to look at it. You're basing your motion on a video that I haven't seen. I make enough bad decisions when I see

the things you're arguing.

MR. McCANN: Well, we've outlined our argument in that motion. And I don't think the law was abided by under 924(c).

THE COURT: Okay.

Yes, ma'am?

MS. HENDERSON: Your Honor, I did bring my computer. And I have the videos on it if you would like to watch it now. Or I can submit copies of it to chambers for you to view in your time.

THE COURT: That would be a better idea.

MS. HENDERSON: Your Honor, what I will say is Mr. McCann is -- this is not a question of law. This is a clear question of fact for the jury. Mr. McCann does not realize that at this buy the defendant and the source were waiting for another re-up of meth.

So the source got there. The defendant gave him what he had. He then called another source, who was supposed to bring more meth. This is why the CI doesn't leave immediately. That's what he's hanging around for. He's waiting for the second batch of meth to come through. The drug deal ongoing until they get the call that the guy's not going to be there or make it that day and the source leaves. So the drug deal is not complete when the defendant --

**THE COURT:** You mean the CI leaves, not the source leaves.

**MS. HENDERSON:** I'm sorry. Well, the source, the CI, the confidential source, I'm sorry. I was using them interchangeably, Your Honor.

**THE COURT:** We have a source bringing the drugs and then we have the CI.

**MS. HENDERSON:** You are right. I apologize. I will restate it for the record, Your Honor.

The CI gets there, meets with Mr. Hampton. He gives him a quantity of drugs. The CI needs more meth. Mr. Hampton places a call to the source of supply and he says he'll be there in a little bit. So the CI stays.

Now, it's not exactly clear at what point or if the entire time Mr. Hampton had the gun on him. But during the time period where the CI is waiting for the source of supply to bring additional meth, you can clearly see a gun in Mr. Hampton's hip. That gun was present while the controlled drug deal was ongoing. Whether or not that drug deal was complete, whether or not that gun was used in furtherance of or possessed in connection with, these are all questions for the jury to make, Your Honor.

An expert witness can testify about the correlation between drugs and guns and stuff like that.

The evidence that would come in, the CI would testify about when he saw the gun. These are all facts that will come in in front of a jury. They are all question of fact for the jury to determine. There is sufficient facts present for it to be legally possible that a 924(c) was committed, Your Honor.

And I will get copies of the video submitted to chambers for your review.

**THE COURT:** Thank you.

Yes, sir?

**MR. McCANN:** Your Honor, when the transaction -- this video would show when the transaction was complete; that is, the sale took place or the transaction took place, at that point there was no gun in play at all and the video will show that. So that's when the gun had to be in play under the 924(c) and it wasn't. If it was later, fine. Where is the gun? They never got the gun. They didn't come in and arrest anybody. And it just wasn't in play and that's not a factual dispute. The law wasn't violated at that point when this took place.

**THE COURT:** So there's no way I can make an informed decision on this motion without seeing the video. You agree with that?

**MR. McCANN:** I agree. And also, I'd like for the CI file to be turned over to me before -- if we go to

that viewing before we do that, Your Honor. The CI is known to everybody in this case. It's no secret who he is. This happened three years ago. As far as I know there's been no harm rendered to him, no threats against him. And the Government is saying they can't release the CI information, the FBI CI until 14 days before trial. Some rule that I don't know if it's codified or not, but that's their rule. But that doesn't help us defend our client. He's known. He hasn't been harmed. And we need the information, all the information in the CI file to release to us before then. I'd ask the Court to do that as well.

**THE COURT:** Okay.

Yes, ma'am?

**MS. HENDERSON:** Your Honor, I don't know where the arbitrary 14 weeks before trial. I think all I've ever said is that if this case goes to trial, the only thing that we're withholding are the buy videos, which Mr. McCann has been allowed access to for as long as he's wanted. He was in our office for hours not too long ago before he filed this motion watching them. There is nothing else being withheld.

I think what he's asking for is internal FBI documents on sources and that is never disclosed. Those documents contain every case a source has ever worked.

It's not just this case. He -- I asked about those documents. FBI lawyers would fight. Those are never turned over. I've never seen them. I've don't have access to them. I've never looked at one. Everything related to this CI, the debriefings, those have been turned over. So the only thing that's been withheld are the actual stills from the video. So the only thing that hasn't been provided for the defendant to view is the videos themselves.

**THE COURT:** So what are you talking about the CI file, Mr. McCann?

**MR. McCANN:** Well, I assume that this CI before he -- I'm guessing but I'm probably right, was employed by Government, was working off some criminal activity. And that's usually the way it is. And I'd like to know what other cases he may have been involved in, whether he was paid for his work, and what he's done since, whether he's been in any trouble since. I don't know any of that.

And so we'd be going in basically blind if we had to litigate this. I think we can litigate this pretrial. And they can wait to turn it over two weeks beforehand if that's the rule. Or they can turn over what's in the file to the Court. And you know what I'm after. You could take a look at what the file says and see if I'm entitled.

**THE COURT:** You're giving me too much credit to say that I know what you're after. You have a very fertile mind and I can't keep up with it a lot of the time. So I don't know what you're after.

**MR. McCANN:** Okay.

**MS. HENDERSON:** Your Honor, a criminal history for any witness would be disclosed to the defense prior to trial, which would answer most of that. The internal FBI documents are a whole different ballgame. I don't have the authority to turn those over. I cannot turn those over. So that's the only thing I can think of that he thinks he's entitled to that he doesn't have. Because I've turned over everything that I have on that individual short of his criminal history because that would readily identify him. That will be turned over in ample time to get ready for trial.

**MR. McCANN:** Judge, I think you do have the authority to order the FBI to turn it over.

**THE COURT:** I've got the authority to do a lot of things that I'm not going to do. I've got the authority to put you in jail right now, but I'm not going to do it.

**MR. McCANN:** Well, I'm talking about helping us with this defense to properly defend our client. This is an important charge. There were two in the indictment.

One has failed. And you know what the penalty is if he's convicted of this.

**THE COURT:** Is there a written motion with regard to the CI file?

**MR. McCANN:** Yes, I've included it in Motion 752.

**THE COURT:** Okay.

**MR. McCANN:** And also in light of what's happened with the other three charges that were dismissed and with this one, I'd like to know what the Government told the grand jury on these two particular -- all these counts. That's also in the motion.

**THE COURT:** Okay. So I didn't have 752 on the docket for today.

**MR. McCANN:** I know. I know.

**THE COURT:** I'll look at that. If I need another hearing, I'll schedule another hearing.

**MR. McCANN:** Okay. Judge, there was one other pending motion that's off this subject was I moved for and ask the Court to order probation to turn over their file to me and the supervised release violation that my client is facing. And they said it's the -- that these records belong to the Judge and I need to get you to order it. So I filed that motion I think with an order last year.

**THE COURT:** Do you have the number of that one,

too, since there are so many?

MS. HENDERSON: The supervised release, Your Honor, is in the RICO case. It's under a different case number.

MR. McCANN: I'll get you the docket number.

THE COURT: Just get me the docket number on that one.

MR. McCANN: I'll phone it to you.

THE COURT: So all you want to do is look at the supervised release violation report on your client?

MR. McCANN: Yes, the records they have. This would govern, you know, he was on a monitor, checking his work record, all this that may enter into sentencing on the supervised release violation.

THE COURT: Has he been arrested on the supervised release violation?

MR. McCANN: Yes, he's been charged.

THE COURT: Why don't you have the file? They've got to file something.

MS. HENDERSON: I don't think he's the attorney of record on that.

MR. McCANN: I am. It got transferred to me when he got indicted. I think the PD had it beforehand. And I have what they have but it wasn't everything.

THE COURT: It wasn't what?

MR. McCANN: It wasn't everything.

MS. HENDERSON: This case is what he was violated for.

THE COURT: Okay. All right. Gotcha. So just give me the docket number of his old file and I can take a look at it. Okay?

MR. McCANN: Okay. And again, Your Honor, present a motion to release the grand jury testimony that pertains to the counts that we've been talking about today, what they told the grand jury.

MS. HENDERSON: Your Honor, I can file a written response to that if you need me to. I think Your Honor is well versed on the law surrounding the disclosure of grand jury transcripts prior to trial. I don't know that that witness is even going to testify at trial. But with the rules of secrecy surrounding the grand jury, the law does not support turning over the -- what he's basically asking for is a fishing expedition. And that's specifically against the rules for turning over a grand jury transcript. But I can write a formal response if you want me to.

THE COURT: Okay.

MR. McCANN: Your Honor, I hear the fishing argument all the time, you know?

THE COURT: Because you go fishing all the time.

**MR. McCANN:** I am. I have a license to fish, to find out what the evidence is against my client. And this goes back a number of years. Maybe you and I are the only ones that may remember it. The Government had an open file policy where they would give you grand jury testimony under heavy rules, orders. You can't do anything with it but look at it. You can't copy it. You've got to give it back. At some point that stopped. But it's sworn testimony that brought these charges forward. I'd like to look at it. I'll look at it in your office if you'd like. But I'd like to look at it. I owe that to my client to look at it.

**THE COURT:** All right. I'll take a look at it and see.

**MR. McCANN:** This is the -- the docket number for the my motion for the probation records is 1177 because it's under the old case that he was under supervised release for 16-0012 was the old case -- 122.

**THE COURT:** So is it 22, 022, or 122?

**THE LAW CLERK:** 2:16-00122.

**THE COURT:** 00122, gotcha.

**MS. HENDERSON:** And just to throw a wrench in things, he also has an escape charge that I think he was on supervised release for. So it might be a double violation.

THE COURT: One will refer to the other one.

MS. HENDERSON: Yeah.

THE COURT: Okay. Anything else?

MR. McCANN: Your Honor, I think that's it.

One more moment, Judge, please?

THE COURT: Sure. (Pause.)

MR. McCANN: It's just come to my attention, and it's news to me, there may -- there was another visit by the CI and my client on June 23rd. And I think we have the audio of that, but I don't know if there was a video. But I'd ask you to check and see if there was.

MS. HENDERSON: Off the top of my head, Your Honor, I don't know. I'm sorry.

THE COURT: That's all right.

MR. McCANN: Thank you for your time today, Judge.

THE COURT: Sure. Let me make sure. You represent Mr. Hampton on 16-122, the supervised release?

MR. McCANN: When I got this case, I inherited that as well.

THE COURT: Okay. I just wanted to make sure to tell the probation office. Okay?

MR. McCANN: Yes.

THE COURT: Great. Anything else?

MS. HENDERSON: Nothing from the Government,

Your Honor.

**THE COURT:** Anything else, Mr. McCann?

**MR. McCANN:** That's all I have at this point, Judge. Thank you.

**THE COURT:** We'll get something out. Thank you.

**MS. HENDERSON:** Thank you, Judge.

(WHEREUPON, court was adjourned at 2:27 PM)

***

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/Karen E. Martin 1/29/2026

______________________________ __________________

Karen E. Martin, RMR, CRR Date